1  Matthew C. Helland, CA SBN 250451
   helland@nka.com
2  Daniel S. Brome, CA SBN 278915
   dbrome@nka.com
3  NICHOLS KASTER, LLP
4  235 Montgomery Street, Suite 810
   San Francisco, CA 94104
5  Telephone: (415) 277-7235
   Facsimile: (415) 277-7238
6

7  Attorneys for Plaintiff and Others
   Similarly Situated
8

9
                    **IN THE UNITED STATES DISTRICT COURT**
10                   **NORTHERN DISTRICT OF CALIFORNIA**

11 | Darren Stemple and Stefan Flores, on behalf of themselves and others similarly situated, | **Case No. 3:18-cv-04909-LB** |
12 | | **PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT** |
13 | Plaintiffs, | |
14 | v. | |
15 | RingCentral, Inc., | Date:   November 14, 2019 |
   | | Time:   9:30 a.m. |
16 | Defendant. | Room:   Courtroom B, 15th Floor |
17 | | Action Filed: Aug. 13, 2018 |
18 | | **Hon. Laurel Beeler** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.   Introduction ................................................................................................................ 1

II.  Relevant background and procedural history ............................................................ 2

    A.  Preliminary approval and distribution of notice ................................................ 2

    B.  Case Value and Settlement Amount ................................................................... 2

    C.  Allocation ........................................................................................................... 3

    D.  Objectors or Disputes ......................................................................................... 4

III. Argument .................................................................................................................... 4

    A.  The court should grant final approval of the settlement .................................... 4

    B.  The proposed Settlement is fundamentally fair, adequate, and reasonable ....... 5

        1.  The strengths of Plaintiffs' case ................................................................... 5

        2.  The risk, expense, complexity, and duration of further litigation ............... 7

        3.  The risk of maintaining class action status through trial ............................ 7

        4.  The amount offered in settlement ................................................................ 8

        5.  The extent of discovery completed and the stage of proceedings ............. 10

        6.  The experienced views of counsel .............................................................. 10

        7.  Presence of a Governmental Participant .................................................... 10

        8.  The views of class members ....................................................................... 10

    C.  The FLSA settlement is a reasonable compromise of a bona fide dispute ..... 11

    D.  Class Certification Should be Maintained for Settlement Purposes ............... 12

    E.  The Court should approve the requested attorneys' fees and costs, administration costs, and enhancement awards ................................................................................. 12

    F.  The Court Should Approve the *Cy Pres* Recipient ........................................ 13

CONCLUSION ..................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ........................... 4, 9, 10

*Bisaccia v. Revel Sys. Inc.*, 2019 WL 3220275 (N.D. Cal. July 17, 2019) ............................ 7, 11

*Chavez v. PVH Corp.*, 2015 WL 9258144 (N.D. Cal. Dec. 18, 2015) ...................................... 13

*Ching v. Siemens Indus., Inc.*, 2014 WL 2926210 (N.D. Cal. June 27, 2014) ............................ 7

*Covillo v. Specialty's Café*, 2014 WL 954516 (N.D. Cal. 2014) ........................................... 8, 11

*Dermis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ................................................................ 13

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ............... 12

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ..................................... 11

*Ladore v. Ecolab, Inc.*, 2013 WL 12246339 (C.D. Cal. Nov. 12, 2013) ................................... 13

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ....................................... 9

*McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848 (E.D. Cal. Nov. 27, 2017) ................................................................................................................................... 13

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) .................................... 13

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) . 10

*Nelson v. Avon Products, Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) .............. 6, 9, 10, 11

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ....................... 5

*Otey v. Crowdflower, Inc.*, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016) .................................... 4

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............. 9

**Regulations**

29 C.F.R. § 779.315 ..................................................................................................................... 5

29 C.F.R. § 779.319 ..................................................................................................................... 5

7 CCR 1103-1(6)(b) ..................................................................................................................... 5

**Other Authorities**

DOL Opinion Letter FLSA2018-21 (Aug. 28, 2018) ................................................................... 6

**NOTICE OF MOTION AND MOTION**

Please take notice that at 9:30 a.m. on November 14, 2019 or as soon thereafter as the matter may be heard, in Courtroom B, 15th Floor of the above-captioned Court, Plaintiffs will, and hereby do, move this Court for final approval of the Parties' settlement. This Motion is based on this Notice, the Memorandum of Points and Authorities and accompanying declaration, the Court's file in this matter, and such other arguments or evidence as may be presented at the hearing on the Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    Introduction**

This case was brought by Inside Sales Representatives ("ISRs") who worked for RingCentral, Inc. seeking unpaid overtime. The case includes approximately 338 individuals, including 14 Pre-Settlement FLSA Class Members (the named and opt-in plaintiffs who already asserted claims under the Fair Labor Standards Act ("FLSA"), many of whom are also state law Class Members), over 200 Colorado settlement class members, over 80 North Carolina settlement class members, and over 30 individuals who worked in a state without a Rule 23 settlement class but who are eligible to opt-in and participate in the settlement. (Brome Decl. ¶ 2.)

The settlement is worth a total of $2,724,714.75, which represents very good value for the Class Members. Class Members will receive—after attorneys' fees and costs—an average of $6,001.59 per person. (Brome Decl. ¶ 3.) Notice was sent out to 338 class members on September 12, 2019. (Brome Decl. ¶ 4.) The deadline to return claim forms, reject the settlement, or opt out is November 12, 2019; Plaintiffs will update the Court on the response to the settlement prior to the final approval hearing and again at the final approval hearing. (Brome Decl. ¶ 5.) As of October 11, 2019, the Settlement Administrator has processed ninety-nine (99) valid claim forms, no objections, and no requests for exclusion. (Brome Decl. ¶ 4.) In this large class, there have only been two dispute forms returned.[1] At this early stage of the

---

[1] Two class members contested the dates of employment reflected in the initial data; the Settlement Administrator is working to resolve these issues. (Brome Decl. ¶ 4.)

notice period, class members have responded positively to the proposed settlement. In light of this favorable response from the Class, and the substantial value the settlement provides for individuals with challenging claims, the Court should grant final approval so this matter may be closed and payments distributed.

## II. Relevant background and procedural history

### A. Preliminary approval and distribution of notice

The Court granted preliminary approval on August 15, 2019. (ECF No. 56.) Notice was distributed to 338 eligible Class Members and Opt-in Plaintiffs. Within three weeks of notice being sent, the Settlement Administrator had received and processed ninety-nine (99) valid claim forms, representing over 29% of total class members. Two class members returned a dispute form, but no class members have opted out, objected, or requested to be excluded from participating in the settlement.

The Settlement Administrator is providing weekly updates to Counsel regarding the status and composition of class member responses. Plaintiffs will provide a further update to the Court prior to the final approval hearing, and again at the final approval hearing.

### B. Case Value and Settlement Amount

Plaintiffs' Counsel calculated the total value of the claims for all Class Members using data obtained from RingCentral, information provided by Plaintiffs, and reasonable uniform assumptions about hours worked and likelihood of success. Based on those assumptions, Class and Collective Members' total damages amount to $7,583,546.88. (Brome Decl. ¶ 6.) This damages analysis assumes: complete success on: (1) conditional certification of the FLSA claims and a 100% participation rate, (2) class certification under Colorado and North Carolina classes, (3) establishing liability under the FLSA and both state laws, (4) defeating the fluctuating workweek under federal and state laws, (5) establishing a willful violation, and (6) recovering liquidated damages. A loss on any of these elements would significantly reduce Plaintiffs' damages. (Brome Decl. ¶ 6.) The settlement amount represents 36% of the maximum damages, assuming success on these and other contested issues.

### C. Allocation

As explained in the Preliminary Approval Motion, the Settlement Amount of $2,724,714.75 will include settlement payments to all Settlement Class Members, incentive awards, fees and costs award, and all Individual Settlement Payments, including Employee Taxes, but excluding Employer Taxes and administrative costs. (ECF No 56 at 4.)

The Settlement Amount is to be allocated pro rata, based on the workweeks worked by Settlement Class Members. The individual settlement payments will be divided evenly between wage and non-wage claims: 50% of the individual settlement payment will be allocated to wage claims, which will be subject to required tax withholdings, and the other 50% will be allocated to cover liquidated damages, interest, and/or statutory penalties, reported on an IRS form 1099.

Prior to distribution of Notice, the Settlement Amount was allocated based on each individual's damage amounts, after deducting anticipated attorneys' fees ($681,178.69), litigation costs ($15,000), enhancement awards ($6,000).[2] This amount does not include the costs for administration of the Settlement, which RingCentral will pay. (ECF No. 56 at 4.) The Notice of Settlement and Consent to Join and Release Forms advised class members of their calculated settlement amount. (Brome Decl. ISO Prelim. Appr., ECF No. 48-1 at 35-61.) Following the Notice process, the individual settlement amounts will be recalculated. The settlement amounts will only go up, and not down, because the initial allocation assumed 100% participation, and the recalculation will distribute money originally allocated to potential class members who did not participate in the settlement.

Any money that remains after the distribution of checks and the expiration of the time period to cash settlement checks (180 days from issuance) will be donated to Community Legal Services in East Palo Alto, a non-profit that specializes in immigration, housing, workers' rights, records clearance, and consumer protection, as a *cy pres* beneficiary. (ECF No. 56 at 5.)

---

[2] The Parties also agreed to reserve $8,500 as a contingency fund prior to distribution of notice. If this fund is not needed to address disputes during the notice process, it will be reallocated to Settlement Class Members. (Brome Decl. ¶ 7.)

### D. Objectors or Disputes

The settlement administrator has not received any written notice of any objections to the settlement to date. There has been one dispute form returned by a class member, which is being processed by the Settlement Administrator. Class members may file a dispute form to challenge the length of time they worked for RingCentral. Returning a dispute form does not mean that the class member has objected to the settlement or wants to opt-out, but that he or she in fact wants to be part of the settlement.

### III. Argument

#### A. The court should grant final approval of the settlement

In granting preliminary settlement approval, this Court found the settlement agreement negotiated by the parties to be fair, reasonable, and adequate. (ECF No. 56 at 9–11.) In the second stage of Rule 23 settlement evaluation, the court "must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to their agreed upon terms," recognizing that "[j]udicial policy strongly favors settlement of class actions. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015). Similarly, FLSA collective action settlements require approval from the Department of Labor or a court. *Otey v. Crowdflower, Inc.*, 2016 WL 304747, at *3 (N.D. Cal. Jan. 26, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982)). Provided the settlement constitutes "a fair and reasonable resolution of a bona fide dispute," the "court may 'approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

Here, the substantial value of the settlement to the class members negotiated as a result of arms-length negotiation facilitated by a skilled Employment law mediator indicates that the settlement is fair, adequate, and reasonable. Furthermore, the positive response from class members thus far supports such a finding. Accordingly, this Court should approve the settlement so that class members may promptly receive their settlement payments.

**B. The proposed Settlement is fundamentally fair, adequate, and reasonable**

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement asks this Court to balance several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these factors support final approval of the settlement.

1. The strengths of Plaintiffs' case

Plaintiffs contend that Defendant incorrectly classified ISRs as exempt from federal and state overtime laws. By incorrectly classifying ISRs, Defendant failed to pay appropriate overtime compensation.

RingCentral asserts that its ISRs were correctly classified as exempt; Plaintiffs dispute that any exemption applies. The Parties have focused on the Retail Sales Exemption, which exists under the FLSA, and Colorado law. *See* 29 C.F.R. §§ 779.315-316; *see* 7 CCR 1103-1(6)(b) (describing the "Commission Sales Exemption" from overtime). Plaintiffs contend that to qualify for this exemption an employer must have a traditional retail concept, which RingCentral does not. 29 C.F.R. §§ 779.315-316. A retail establishment must be "ordinarily available to the general public," and "does not take part in the manufacturing process." 29 C.F.R. § 779.319. Plaintiffs argued RingCentral does not have a traditional retail concept because its offices are not physically available to the general public. Additionally, RingCentral's cloud-based telecommunications system is not available for sale to the general public. Instead, RingCentral's product is only sold to businesses, and specifically to businesses from a list of leads provided by RingCentral. *See* 29 C.F.R. § 779.319 (retail establishment must be "ordinarily available to the general public," and "does not take part in the manufacturing process.").

While Plaintiffs believe Defendant cannot qualify for the exemption, they recognize that the case law on this exemption is inconsistent, and the exemption has not been tested within this industry. A recent Opinion Letter from the Department of Labor concluded that an employer that "sells a technology platform to merchants that enables online and retail merchants to accept credit card payments from their customers from a mobile device, online, or in-person" qualified as a retail or service establishment. DOL Opinion Letter FLSA2018-21 (Aug. 28, 2018). As such, there is legal uncertainty as to whether the retail sales exemption applies to Plaintiffs, and therefore a *bona fide* dispute exists.

Moreover, North Carolina class members must overcome additional hurdles in order to prove they are entitled to recover under North Carolina law. North Carolina's overtime law creates an exemption from overtime for workers covered by the FLSA, which Defendant will certainly argue prevents recovery of overtime wages for North Carolina employees. *See* N.C. Gen. Stat. 95-25.14(a)(1). North Carolina law also states that "[w]ages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance." N.C. Gen. Stat. 95-25.6. This provision has the potential to undermine Plaintiffs contention that they were not paid all wages when due, and Defendant will certainly argue that it applies to the North Carolina employees. There is no clear authority on whether workers, such as Plaintiffs here, who are covered by the FLSA, would ultimately be able to recover under North Carolina's overtime law or the law requiring timely payment of wages when due based on misclassification or failure to pay overtime wages.

Given Defendant's exemption defenses, liability is not certain. Even if Plaintiffs establish liability, Defendant's arguments regarding hours worked, and lack of detailed time records, could greatly reduce Plaintiffs' damages.

While Plaintiffs maintain they have a strong claim, there are clear risks, which favor approval of the Settlement. *See Nelson v. Avon Products, Inc.*, 2017 WL 733145, at **3–4 (N.D. Cal. Feb. 24, 2017) (granting final approval of wage and hour settlement for 289 salespeople and finding that defendant's asserted exemption defenses, difficulty in proving hours, and risk of decertification weigh in favor of settlement).

### 2. The risk, expense, complexity, and duration of further litigation

This case has been litigated efficiently, with both Parties cognizant that full-blown litigation would be costly and protracted. Because Defendant agreed to early mediation, the Parties avoided litigating conditional certification and class certification, among other disputes. Defendant would have likely opposed certification of the collective and would have vigorously opposed class certification.

Without this settlement, the Parties would face contested class certification, decertification, and summary judgment motions, all of which would require additional discovery. Employment class actions such as this one are often complex and time consuming. *Bisaccia v. Revel Sys. Inc.*, 2019 WL 3220275, at *5 (N.D. Cal. July 17, 2019) (granting final settlement approval and noting that settlement was supported by "the complexity of this litigation and the substantial risk Plaintiffs would face in litigating the case given the complex nature of the asserted claims."). If litigation in this case continued, numerous factual and legal disputes would delay resolution. Even if the exemption defenses were resolved through summary judgment, Plaintiffs would need to prove their hours worked. Disputed hours would almost necessarily require a trial, and wage and hour trials are complex, expensive, and unpredictable. The complexity and unpredictability of such a trial could be increased because of the lack of wage statements accurately reflecting the hours worked by Plaintiffs and class members. If Plaintiffs prevailed at trial, Defendants would likely appeal. Accordingly, there is no quick and easy route to payment for the class members absent this settlement. *See Ching v. Siemens Indus., Inc.*, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (granting final approval recognizing that wage and hour class cases entail "significant procedural hurdles…, including class certification" and lengthy, complex trials). This factor therefore weighs in favor of approval of the settlement.

### 3. The risk of maintaining class action status through trial

As noted in section III.B, *supra*, the Parties agree that this case is appropriate for settlement on a class-wide basis. However, Plaintiffs have not yet moved for class certification, and Defendant would have opposed Rule 23 certification.

Plaintiffs assert that all ISRs were misclassified as exempt, regardless of their location, job title, length of employment, or hours worked. However, the job titles of ISRs include, among others, Business Development Representative, Sales Development Representative, and Account Executive. Plaintiffs bring claims on behalf of all ISRs, but their ability to move forward as a class would be challenged by, *inter alia,* the differing job titles, the nature of the specific work done by individual ISRs, and their different locations. These differences would result in heavily litigated class and collective certification procedures as Defendant will certainly attempt to reduce the number of ISRs entitled to participate in this action.

Even if Defendants were not successful in opposing the certification of a Rule 23 class, such a motion would likely require substantial discovery and further delay litigation. "[I]t is indisputable that further litigation would be time-consuming and expensive for both sides." *Covillo v. Specialty's Café*, 2014 WL 954516, at *5 (N.D. Cal. 2014). This settlement provides substantial relief to class members which could otherwise be unavailable, and eliminates the need for lengthy discovery and litigation on the issue of class certification. The Court should approve the settlement.

### 4. The amount offered in settlement

The settlement amount, $2,724,714.75, will bring substantial relief to the class members, which will cover up to 338 potential class members. First, that amount compares very favorably with the value of the claims as calculated by Class Counsel. Under the assumptions outlined above, Counsel calculated the value of the Class and Collective Members' maximum total damages as $7,583,546.88. The total settlement value therefore represents to 36% of the maximum damages, assuming success on a variety of contested issues. There are numerous scenarios in which Plaintiffs could achieve partial success, and recover less than the amount of this settlement. For example, if Plaintiffs recovered all their unpaid wages under the FLSA, Colorado and North Carolina law using the fluctuating workweek method, without willfulness or liquidated damages, the total damages amount to $1,223,541.88, assuming five hours of

overtime per week.³ (Brome Decl. ¶ 6.) The settlement amount far exceeds this entirely plausible result.

The Individual Settlement Amounts are also substantial. Assuming all class members participate in the settlement, class members will receive an average value of $6,001.59 per person, before deductions. (Brome Decl. ¶ 3.) Assuming full participation, individual amounts range from $75.53 (for an individual with one covered workweek) to $14,317.30 (for 22 individuals with 190 covered workweeks). (*Id.*) Assuming full participation, 78 individuals will receive over $10,000, and another 85 will receive between $5,000 and $10,000. (*Id.*) These amounts will be recalculated following the notice process, and may increase depending on participation. Plaintiffs will update the Court on the final allocation following the Notice deadline.

Recovery at this rate strongly supports approval. *See Bellinghausen*, 306 F.R.D. at 256–57 (granting final approval where settlement fund "represents between 25.4 percent and 8.5 percent of Defendant's total potential liability exposure" and "the average estimated settlement award for class member is just over $450, while the highest estimated award for a single class member is just over $3,250."); *Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement worth 7.3 percent of what Plaintiffs estimated could be awarded at trial); *Ma v. Covidien Holding*, 2014 WL 360196, at *5 (C.D. Cal. Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'"). In *Nelson*, which concerned a similar number of sales representatives in a claim for overtime, the total settlement represented "more than 12 to 24 percent of the alleged overtime damages" <u>before</u> deductions. 2017 WL 733145 at *4. Here, before deductions, the settlement value represents 36% of the value of all of Plaintiffs' claims. (Brome Decl. ¶ 6.)

This factor strongly favors approval.

---

³ Alternatively, if Plaintiffs prevailed under the FLSA (including on the fluctuating workweek, willfulness, and liquidated damages), with a 30% opt-in rate, but lost class certification of the state law claims, total damages would drop to $2,530,793.65. (Brome Decl. ¶ 6.).

### 5. The extent of discovery completed and the stage of proceedings

Although the Parties have not begun formal discovery, Defendant has provided substantial data regarding class members' work and pay history, including detailed pay records for the Named Plaintiffs and twenty other ISRs. This data was used to calculate aggregate damages for all class members. The parties engaged in arms-length negotiations with the benefit of plenty of evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. *See Nelson*, 2017 WL 733145, at *4 (noting that formal discovery is not required and review of relevant data, such as payroll records—even for a portion of the class—is more important and favors approval). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). The amount of discovery the parties have thus far conducted and the calculations based on the sample of twenty-two ISRs supports the finding that the Settlement is fair and reasonable.

### 6. The experienced views of counsel

Class Counsel have extensive experience in nationwide wage and hour litigation. Class Counsel is confident that this settlement is fair and reasonable, and provides excellent value to class members. (Brome Decl. ISO Prelim. Appr., ECF No. 48-1 at ¶ 4.) The settlement provides clear advantages over continued litigation, including prompt and certain payment. (*Id.*) This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of Plaintiffs and Defendants, facilitated by a skilled mediator, after thorough factual and legal investigation, and detailed damages calculations. (*Id.*) This factor favors final approval. *Nelson*, 2017 WL 733145 at *4; *Bellinghausen*, 306 F.R.D. at 257.

### 7. Presence of a Governmental Participant

There is no governmental participant in this case, rendering this factor neutral. *Nelson*, 2017 WL 733145, at *5.

### 8. The views of class members

The reaction of the class thus far supports approval. Notice was sent out to 338 class members on September 12, 2018, and the notice period runs until November 12, 2019. As of

October 11, 2019, ninety-nine (99) class members have returned valid claim forms. The administrator will send a reminder mailing on October 22, 2019. Class members may dispute the length of time that they worked at RingCentral, and two class members have submitted a dispute form to be evaluated and processed by the settlement administrator. The administrator and Plaintiffs' Counsel will take steps to ensure that all class members receive notice, including performing skip traces on returned mail, contacting class members by email, or other reasonable means to communicate with class members – the administrator has already re-mailed 100 notice forms. (Brome Decl. ¶ 4.) Taking these steps supports granting approval. *Bisaccia*, 2019 WL 3220275, at *4. The rate of participation within a short period after notice was sent to class members, and the lack of objection or rejection to the agreement weighs heavily in favor of final approval. *Covillo*, 2014 WL 954516, at *6 (38% participation with no objections and no opt-outs "strongly favors approval"). Plaintiffs' Counsel will keep the Court informed of the status and composition class member responses. Because there have been no objections or requests for exclusion, this factor "strongly favors final approval." *Nelson*, 2017 WL 733145, at *5.

### C. The FLSA settlement is a reasonable compromise of a bona fide dispute

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982). Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. Here, the Settlement is a compromise over numerous issues, so approval is warranted.

As described above and in Plaintiffs' preliminary approval motion (ECF No. 102 at 13–16), there are numerous issues in dispute here: applicability of FLSA exemptions, statute of limitations, appropriateness of collective certification, method of calculating damages, and the actual number of hours worked by Plaintiffs. The settlement reflects a "reasonable compromise" on these issues, in that the class will receive 36% of the maximum potential value of claims. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval).

Additionally, Plaintiffs anticipate that all the FLSA Opt-ins will participate in the settlement, which favors approval. Accordingly, the settlement satisfies the *Lynn's Food* standard, which is less rigorous than the Rule 23 approval standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

### D. Class Certification Should be Maintained for Settlement Purposes

In granting preliminary approval, the Court granted provisional class certification. (ECF No. 56 at 8.) As explained in the preliminary approval motion, certification is warranted under Rule 23 for the state law settlement classes. (ECF No. 102 at 18–23.) Nothing has changed about the groups of inside sales representatives since the preliminary approval motion. Accordingly, Plaintiffs asks that the Court maintain this certification of the Rule 23 classes and approve the Settlement.

### E. The Court should approve the requested attorneys' fees and costs, administration costs, and enhancement awards

Plaintiffs will file a separate motion for attorneys' fees and costs before the end of the notice period. *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). As will be explained there, Class Counsel seeks attorneys' fees from the common fund at the benchmark amount of 25%, pursuant to the Parties' Settlement Agreement. In addition to the factors to be set out in that motion (the results obtained, the quality of counsel and the work performed, the complexity of the issues, the risk of nonpayment in contingent litigation, and a lodestar cross-check), Plaintiffs note that the Class Members' responses to the notice of settlement thus far supports granting the requested fees.

Similarly, both the preliminary approval motion and the fee motion addressed the reasonableness of awarding enhancement awards to the two Named Plaintiffs. (Brome Decl. ISO Prelim. Appr., ECF No. 48-1 at 41, 51, 58) In addition to the reasons set out previously (specifically: the Named Plaintiffs have been actively involved in this litigation, have taken on reputational risk on behalf of the class, and are agreeing to general releases of claims as opposed to the narrow wage and hour releases applicable to class members, the requested awards are modest compared to the total settlement amount and average class member

payment), the reaction of the class supports granting approval. The class notice informed class members that the settlement would distribute "up to $6,000 total for the two Named Plaintiffs." (*Id.*) At this time, no class members have objected to this—or any other—term.

The immediate positive reaction of the class and the absence of any requests for exclusion supports approval of the requested attorneys' fees and Named Plaintiff enhancement awards.

### F. The Court Should Approve the *Cy Pres* Recipient

In the event that any settlement checks remain uncashed after 180 days, the Settlement Agreement calls for those funds to be donated to Community Legal Services in East Palo Alto ("CLSEPA") as a *cy pres* beneficiary. (Settlement Agreement at 19). Through its Economic Advancement Program, CLSEPA "strives to help low-income community members maximize their earning potential and access opportunities for their families by protecting their income from wage theft, scams, or fraud and improving their chances of future employment."[4] Courts have regularly approved *cy pres* beneficiary designations in employment law actions to organizations doing the type of work that CLSEPA does. *See Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) (approving Legal Aid at Work as *cy pres* recipient, noting that "the work performed by the Employment Law Center bears a substantial nexus to the interests of the class members" in a wage and hour case); *McCulloch v. Baker Hughes Inteq Drilling Fluids, Inc.*, 2017 WL 5665848, at *6 (E.D. Cal. Nov. 27, 2017) (approving Legal Aid at Work as *cy pres* beneficiary in wage and hour class and collective settlement, citing *Dermis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012)); *Ladore v. Ecolab, Inc.*, 2013 WL 12246339, *7 (C.D. Cal. Nov. 12, 2013) (approving California Rural Legal Assistance ("CRLA") as *cy pres* beneficiary in a wage and hour class action based on CRLA's work in enforcing minimum wage and overtime laws by representing low-wage workers); *Chavez v. PVH Corp.*, 2015 WL 9258144, *5 (N.D. Cal. Dec. 18, 2015) (approving Bet Tzedek Employment Rights Project as *cy pres* beneficiary in a wage and hour class action based on Bet

---

[4] https://clsepa.org/services/ (last visited October 10, 2019).

Tzedek's efforts to "enforce minimum labor standards in the workplace by assisting low wage workers").

Accordingly, CLSEPA satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue and the interests of silent class members.

## CONCLUSION

The Court has already found, on a preliminary basis, that the settlement is "fair, reasonable, and adequate." (ECF No. 108 at 12.) Since that decision, the class members have received notice of the settlement, and all are participating in the settlement. The Court should make that decision final and grant approval of the settlement in all respects and enter the Proposed Order of Judgment.

Dated: October 14, 2019                                   **NICHOLS KASTER, LLP**

                                                By:    s/Daniel S. Brome
                                                       Daniel S. Brome

                                                       Attorneys for Plaintiff and Others
                                                       Similarly Situated