UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| DARREN STEMPLE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> RINGCENTRAL, INC., <br><br> Defendant. | Case No. 18-cv-04909-LB <br><br> **FINAL APPROVAL ORDER** <br><br> Re: ECF No. 57, 59 |

## INTRODUCTION

This is an overtime-pay case under federal law and counterpart state laws in Colorado and North Carolina.[1] It is a putative collective action under the Federal Labor Standards Act ("FLSA") and a putative class action for the two state classes under Federal Rule of Civil Procedure 23.[2] The plaintiffs claim that their employer, defendant RingCentral, Inc., misclassified them as exempt under the FLSA and similar state laws and so failed to pay them requisite compensation.[3] The parties settled the case, and the court granted the plaintiffs' motion for preliminary approval of the

---

[1] First Am. Compl. ("FAC"), Ex A. to Stipulation – ECF No. 47 at 5−25; Mot. – ECF No 48; Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 7 (¶ 4). Record citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] FAC – ECF No. 47 at 5−25.

[3] *Id.* at 6 (¶ 5).

ORDER – No. 18-cv-04909-LB

settlement.[4] The plaintiffs moved for final approval of the settlement.[5] The court held a fairness hearing on March 26, 2020. The court finds the settlement fair, adequate, and reasonable and approves the final settlement, including the fees, costs, and enhancement payments.

**STATEMENT**

1. **The Lawsuit**

On August 13, 2018, named plaintiff Darren Stemple filed this overtime-pay lawsuit as (1) a putative FLSA collective action on behalf of a nationwide collective who worked for RingCentral as inside sales employees and (2) a putative class action on behalf of a Colorado class under Colorado wage-and-hour laws.[6] RingCentral answered the complaint on October 3, 2018.[7] On October 5, 2019, the parties entered into a tolling agreement to protect the FLSA claims for those members of the collective who had not yet joined and for unasserted state claims.[8] They agreed to an early mediation with Tipper Ortman, Esq., who has extensive knowledge of employment law, and on January 8, 2019, had a full-day mediation with him and reached a settlement in principle that included putative California and North Carolina classes (in addition to the putative Colorado class).[9] Ultimately the plaintiff was able to add a new named plaintiff only for the putative North Carolina class.[10]

Before mediation, RingCentral provided substantial data regarding class members' work and pay history.[11] Class counsel reviewed and analyzed the data reflecting earnings and hours worked for the class members and the FLSA opt-ins and created a damages model showing maximum

---

[4] Mot. – ECF No 48; Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 6–64; Order – ECF No. 56.

[5] Mot. – ECF No. 57.

[6] Compl. – ECF No. 1.

[7] Answer – ECF No. 17.

[8] Brome Decl. – ECF No. 48-1 at 2 (¶ 2).

[9] *Id.* (¶¶ 2–3).

[10] Brome Decl. – ECF No. 48-1 (¶ 3); FAC – ECF No. 47 at 7 (¶ 10).

[11] Brome Decl. – ECF No. 48-1 (¶ 4).

damages of $7,583,546.88, assuming 45 hours of work per week, and assuming complete success on (1) conditionally certifying the FLSA claims with a 100% participation rate, (2) certifying the Colorado and North Carolina classes, (3) establishing liability under the FLSA and both states' laws, (4) defeating the fluctuating-workweek issue under federal and state laws, (5) establishing a willful violation, and (6) recovering liquidated damages.[12]

After the parties finalized their settlement agreement, the court granted the plaintiffs' unopposed motion for preliminary approval and the parties' stipulation to file a First Amended Complaint to add the North Carolina class.[13] The plaintiffs moved for final approval of the settlement and for their attorney's fees and costs.[14] The court held a fairness hearing March 26, 2020.

## 2. Proposed Settlement

### 2.1 Settlement Class

The parties agreed to the following class definitions for settlement purposes only:

"Class" or "Class Member(s)" means the members of the following subclasses:

   a. "FLSA" class means all individuals who worked for Defendant in a Covered Position at any time during the period beginning August 13, 2015 and ending on March 31, 2019, or the date of Preliminary Approval, whichever is earlier. The "Pre-Settlement FLSA Class" means those individuals who have already filed consent forms in the Action.

   b. "Colorado Class" means all individuals who worked for Defendant in a Covered Position in Colorado at any time during the period beginning August 13, 2015 and ending on March 31, 2019.

   c. "North Carolina Class" means all individuals who worked for Defendant in a Covered Position in North Carolina at any time during the period beginning October 5, 2015 and ending on March 31, 2019.

---

[12] *Id.* at 2–3 (¶ 4).

[13] Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 8 (¶ 7); FAC – ECF No. 47 at 5−21; Order – ECF No. 51; Order – ECF No. 56.

[14] Mot. – ECF No. 57; Statement of Non-Opposition. – ECF No. 58; Mot. – ECF No. 59.

Members of the Colorado Class and North Carolina Class are collectively referred to as the "Rule 23 Class Members."[15]

"Covered Position" is defined as "all inside sales employees, including business development representatives, sales development representatives and account representatives, and other positions with similar job titles and duties."[16] Following the notice process, the FLSA opt-ins and the Rule 23 Class Members who do not opt out will be the "Participating Class Members."[17]

The case includes 338 individuals, including 14 pre-settlement FLSA class members (the named and opt-in plaintiffs) (many are state-law class members), over 200 Colorado settlement-class members, over 80 North Carolina settlement-class members, and over 30 individuals who worked in a state without a Rule 23 settlement class but who are eligible to opt in and participate in the settlement.[18]

**2.2   Settlement Amount and Allocation**

The total settlement amount is $2,724,714.75, which includes enhancement awards for the two named plaintiffs ($5,000 for Darren Stemple and $1,000 for Stefan Flores), and attorney's fees ($681,178.69 or 25 percent of the settlement amount) and actual litigation costs and expenses ($8,219.69).[19] This amount does not include the costs for administration of the settlement, which RingCentral will pay.[20]

"Individual Settlement Payments" will be calculated based on the number of Individual Work Weeks (meaning, the number of workweeks worked by an individual Participating Class Member in a Covered Position), weighted according to whether the Participating Class Member is an FLSA opt-in only, a Rule 23 Class Member only, or both.[21] Participating Class Members who are either an FLSA opt-in only or a Rule 23 Class Member only will be weighted at 1.0, and Participating

---

[15] Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 7 (¶ 4).

[16] *Id.* at 8 (¶ 8).

[17] *Id.* at 10 (¶ 26).

[18] Brome Decl. – ECF No. 57-1 at 2 (¶ 2).

[19] Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 9 (¶ 15), 10 (¶ 23), 11–12 (¶ 33).

[20] *Id.* at 7 (¶ 2).

[21] *Id.* at 22 (¶ 64).

Class Members who are both will be weighted at 1.25.[22] The settlement agreement has procedures for Participating Class Members to dispute their Individual Work Weeks (which will be in the Notice to them).[23] The Individual Settlement Payments will be divided evenly between (1) wage claims, which are subject to required tax withholdings, and (2) liquidated damages, interest, and statutory penalties, which will be reported on an IRS Form 1099.[24] Class members each will receive an average of $6,001.59.[25] Assuming full participation, individual amounts range from $75.53 (for someone with one covered workweek) to $14,317.30 (for 22 persons with 190 covered workweeks).[26] Again assuming full participation, 78 individuals will receive over $10,000, and another 85 will receive between $5,000 and $10,000.[27]

The settlement amount is non-reversionary: (1) if Rule 23 Class Members opt out, their allocated payment will be reallocated to the Participating Class Members; and (2) any uncashed checks for Rule 23 Class Members will be distributed to *cy pres* beneficiary Community Legal Services in East Palo Alto, a non-profit that specializes in immigration housing, workers' rights, records clearance, and consumer protection.[28]

The settlement agreement also provides that the court will retain jurisdiction to enforce its terms.[29]

**2.3   Release Provisions**

In return for the settlement relief, the settlement agreement has release provisions.

FLSA opt-ins release their FLSA claims for their work with the defendant in Covered Positions. The Rule 23 Class Members release their state-law claims relating for work in Covered

---

[22] *Id.* at 10 (¶¶ 20–21), 22 (¶ 64).
[23] *Id.* at 19 (¶ 54).
[24] *Id.* at 22 (¶ 64).
[25] Brome Decl. – ECF No. 57-1 at 2 (¶ 3).
[26] *Id.*
[27] *Id.*
[28] Settlement Agreement, Ex. A to Brome Decl. – ECF No. 48-1 at 21–22 (¶ 64), 24 (¶ 69).
[29] *Id.* at 20 (¶ 59).

1  Positions but release FLSA claims only if they opt in. The two named plaintiffs agree to a general
2  release.[30]

### 2.4   Administration

The court appointed an independent claims administrator, Simpluris Class Action Settlement Administration, to send the class notice to class members at their address from RingCentral's records or any updated address that Simpluris identified through a National Change of Address database search or skip traces on returned mail.[31] Other administration procedures — including notice, administration, procedures for exclusion, and procedures for objections — were set forth in the settlement agreement.[32]

Simpluris complied with these procedures. On September 12, 2019, it sent notice to 338 class members.[33] If notices were returned undeliverable, it conducted an advanced address search (a sip trace) and located current addresses (48 in all), and in the end, there were only two notice packets that were undeliverable.[34] Nine additional persons contacted Simpluris to request inclusion in the settlement, and after defense counsel's review, six were accepted as class members.[35]

347 class members are part of the settlement, and 327 will be paid their part of the settlement funds, broken down as follows: 198 are part of the FLSA and Rule 23 subclasses, 20 class members are FLSA only, and 109 are Rule 23 only.[36] The average estimated payment is $6,205.86, and the highest estimated payment is $15,198.75.[37]

Simpluris has not received any requests for exclusion or objections from any class members.[38]

---

[30] *Id.* at 11 (¶¶ 29–30), 28–29 (¶ 75).

[31] *Id.* at 12 (¶ 34), 15–17 (¶ 47), 17 (¶ 50).

[32] *Id.* at 15–17 (¶¶ 47, 50).

[33] Brome Decl. – ECF No. 57-1 at 2 (¶ 4).

[34] Kline Decl. – ECF No. 70-1 at 4 (¶ 9).

[35] *Id.* (¶ 10). Defense counsel rejected two based on their records, and Simpluris rejected one based on information that the person provided. *Id.*

[36] *Id.* (¶ 11).

[37] *Id.* at 5 (¶ 14).

[38] *Id.* (¶¶ 15, 18).

# ANALYSIS

## 1. Jurisdiction

The court has federal-question jurisdiction under 28 U.S.C. § 1331 for the FLSA claim and supplemental jurisdiction over the Colorado and North Carolina state-law claims.

## 2. Certification of Settlement Class

### 2.1  Rule 23 Requirements

The court reviews the propriety of class certification under Federal Rule of Civil Procedure 23(a) and (b). When parties enter into a settlement before the court certifies a class, the court "must pay 'undiluted, even heightened, attention' to class certification requirements" because the court will not have the opportunity to adjust the class based on information revealed at trial. *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Class certification requires the following: (1) the class is so numerous that joinder of all members individually is "impracticable"; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class; and (4) the person representing the class will fairly and adequately protect the interests of all class members. Fed. R. Civ. P. 23(a); *Staton*, 327 F.3d at 953. Also, the common questions of law or fact must predominate over any questions affecting only individual class members, and the class action must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). All claims arise from the defendant's uniform practices, and thus liability can be determined on a class-wide basis. *Betorina v. Ranstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).

The court finds (for settlement purposes only) that the proposed settlement classes meet the Rule 23(a) prerequisites of numerosity, commonality, typicality, and adequacy. Also, under Rule 23(b)(3) (and for settlement purposes only), common questions predominate over any questions affecting only individual members, and a class action is superior to other available methods.

First, the size of the classes is so numerous that joinder of all members is impracticable.

Second, there are questions of law and fact common to the classes. Common questions include whether RingCentral improperly classified them as exempt and whether they thus are entitled to unpaid overtime compensation. The claims depend on common contentions that — true or false — will resolve an issue central to the validity of the claims. *Cf. Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *Betorina*, 2017 WL 1278758 at *4. These common questions predominate over any questions affecting only individual members.

Third, the claims of the representative parties are typical of the claims of the classes. The representative parties and all class members allege wage-and-hours violations based on similar facts. All representatives possess the same interest and suffer from the same injury. *Cf. id*.

Fourth, the representative parties fairly and adequately protect the interests of the classes. The factors relevant to a determination of adequacy are (1) the absence of potential conflict between the named plaintiff and the class members, and (2) counsel chosen by the representative party who is qualified, experienced, and able to vigorously conduct the litigation. *In re Hyundai and Kia*, 926 F.3d 539, 566 (9th Cir. 2019) (citing *Hanlon*, 150 F.3d at 1020). The court is satisfied that the factors exist here: the named plaintiffs have shared claims and interests with the class (and no conflicts of interest), and they retained qualified and competent counsel who have prosecuted the case vigorously. *Cf. id*.; *Local Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1021–22.

Fifth, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

In sum, the prerequisites of Fed. R. Civ. P. 23(a) and Rule 23(b)(3); are met. The court certifies the classes under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only.

### 2.2   FLSA Class

The FLSA authorizes "opt-in" representative actions where the complaining parties are "similarly situated" to other employees. 29 U.S.C. § 216(b); *see generally Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1042 (2016). Here, all class representatives worked at RingCentral as inside sales representatives and, as discussed in the previous section, have common fact and law questions. The court certifies the FLSA class for settlement purposes only.

### 3. Approval of Settlement

Settlement is a strongly favored method for resolving disputes, particularly "where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *see, e.g., In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). A court may approve a proposed class-action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The court need not ask whether the proposed settlement is ideal or the best possible; it determines only whether the settlement is fair, free of collusion, and consistent with the named plaintiffs' fiduciary obligations to the class. *See Hanlon*, 150 F.3d at 1027 (9th Cir. 1998). In *Hanlon*, the Ninth Circuit identified factors relevant to assessing a settlement proposal: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class-action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceeding; (6) the experience and views of counsel; (7) the presence of a government participant; and (8) the reaction of class members to the proposed settlement. *Id.* at 1026 (citation omitted).

When parties "negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1–2 v. SFBSC Management*, LLC, 944 F.3d 1035, 1043 (9th Cir. 2019) (quoting *Dennis v. Kellog*, 697 F.3d, 858, 864 (9th Cir. 2012)). "Specifically, 'such settlement agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Id.* at 1049 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011)).

The court has evaluated the proposed settlement agreement for overall fairness under the *Hanlon* factors and concludes that it is free of collusion and approval is appropriate.

First, the settlement provides good value and is fair (when contrasted to the maximum damages of $7,583,546.88, which assumes full participation and success on the merits).[43] The individual settlement amounts (as recounted above) are substantial. The plaintiffs cite cases where courts have granted final approval at recovery rates that are equivalent or less.[44] A settlement now also results in money paid now, while litigation results in delay and expense.

Second, the parties dispute whether the employees were correctly classified as exempt.[45] They have focused their dispute on the "Retail Sales Exemption," which exists under the FLSA and Colorado law.[46] RingCentral does not have a traditional retail concept, and its cloud-based telecommunications system is not available for sale to the general public and instead is sold to businesses identified from leads generated by RingCentral.[47] *See* 29 C.F.R. § 779.319 (retail establishment must "ordinarily be available to the general public" and not "take part in the manufacturing process"). The plaintiffs point to inconsistent case law and a recent opinion letter from the Department of Labor.[48] There are other hurdles under North Carolina law.[49] The plaintiffs recognize that liability is not certain.[50] The settlement allows both parties to avoid contested litigation that would be costly and protracted.[51]

Third, a class action allows class members — who otherwise would not pursue their claims individually because costs would exceed recoveries — to obtain relief.

Finally, the settlement is the product of serious, non-collusive, arm's-length negotiations and was reached after mediation with an experienced mediator with subject-matter expertise.

---

[43] Mot. – ECF No. 57 at 11–13; Brome Decl. ECF No. 48-1 at 3 (¶ 4).

[44] *Id.* at 12 (collecting cases).

[45] *Id.* at 8.

[46] *Id.* (citing 29 C.F.R. § 779.315–316 and the Colorado code).

[47] *Id.*

[48] *Id.* at 9.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 10.

In sum, the court finds that viewed as a whole, the proposed settlement is sufficiently "fair, adequate, and reasonable" such that approval of the settlement is warranted. *See Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The court approves the settlement.

For the same reasons, the court approves the settlement of the FLSA collective action.

### 4. Appointment of Class Representative, Class Counsel, and Claims Administrator

The court confirms its appointment of Darren Stemple and Stefan Flores as the class representatives.[52] They have claims that are typical of members of the class generally, and they are adequate representatives of the other members of the proposed classes.

The court confirms its appointment of Matthew C. Helland and Daniel Brome of Nichols Kaster LLP as class counsel for settlement purposes only. *See* Fed. R. Civ. P. 23(a) & (g)(1).[53] They have the requisite qualifications, experience, and expertise in prosecuting class actions.

### 5. Class Notice

As described above, the class administrator provided notice to the members of the class in the form that the court approved previously. The notice met all legal prerequisites: it was the best notice practicable, satisfied the notice requirements of Rule 23, adequately advised class members of their rights under the settlement agreement, met the requirements of due process, and complied with the court's order regarding court notice. The forms of notice fairly, plainly, accurately, and reasonably provided class members with all required information, including (among other things): (1) a summary of the lawsuit and claims asserted; (2) a clear definition of the class; (3) a description of the material terms of the settlement, including the estimated payment; (4) a disclosure of the release of the claims should they remain class members; (5) an explanation of class members' opt-out rights, a date by which they must opt out, and information about how to do

---

[52] Order – ECF No. 56 at 11.
[53] *Id.*

so; (6) the date, time, and location of the final fairness hearing; and (7) the identity of class counsel and the provisions for attorney's fees, costs, and class-representative service awards.[54]

### 6. Compliance with Class Action Fairness Act

The plaintiffs provided notice of the settlement and other information showing compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, to the appropriate federal and state officials on December 12, 2020.[55] The court's final approval hearing is more than 90 days after service as required by 28 U.S.C. § 1715.

### 7. Attorney's Fees and Costs

Class counsel asks for $681,178.69 in attorney's fees (25 percent of the settlement amount) and $8,219.69 in costs.[56] Under the circumstances that attends this case, the court awards the benchmark 25 percent.

Rule 23(h) of the Federal Rules of Civil Procedure provides: "In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fee provisions included in proposed class-action settlements must be reasonable. *See In re Bluetooth.*, 654 F.3d at 941. The court is not bound by the parties' settlement agreement as to the amount of attorney's fees. *See id.* at 942–43. The Ninth Circuit has instructed district courts to review class fee awards with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002) (quotation omitted).

When counsel recovers a common fund that confers a "substantial benefit" on a class of

---

[54] Notices of Settlement, Ex. A-2 to Brome Decl. – ECF No. 48-1 at 34-61.
[55] Notice of Mailing – ECF No. 66 at 2.
[56] Mot. – ECF No. 59 at 2.

ORDER – No. 18-cv-04909-LB                     12

beneficiaries, counsel is "entitled to recover their attorney's fees from the fund." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). In common-fund cases, courts may calculate a fee award under either the "lodestar" or "percentage of the fund" method. *Id.*; *Hanlon*, 150 F.3d at 1029.

Where the settlement involves a common fund, courts typically award attorney's fees based on a percentage of the total settlement. The Ninth Circuit has established a "benchmark" that fees should equal 25% of the settlement, although courts diverge from the benchmark based on a variety of factors, including "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco, Inc.*, No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, *2 (E.D. Cal. Mar. 25, 2013); *see also Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *Pacific Enterprises*, 47 F.3d at 379 (same); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

When determining the value of a settlement, courts consider the monetary and non-monetary benefits that the settlement confers. *See, e.g.*, *Staton*, 327 F.3d at 972–74; *Pokorny v. Quixtar, Inc.*, No. C-07-0201-SC, 2013 WL 3790896, *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *In re Netflix Privacy Litig.*, No. 5:11-CV-0379-EJD, 2013 WL 1120801, *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the *cy pres* method of distribution, and the injunctive relief").

Finally, Ninth Circuit precedent requires courts to award class counsel fees based on the total benefits being made available to class members rather than the actual amount that is ultimately claimed. *Young v. Polo Retail, LLC*, No. C-02-4547-VRW, 2007 WL 951821, *5–*6 (N.D. Cal. Mar. 28, 2007) (citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026 (9th Cir. 1997) ("district court abused its discretion in basing attorney fee award on actual distribution to class" instead of amount being made available) (quoted language from *Young*)).

If the court applies the percentage method, it then typically roughly calculates the lodestar as a "cross-check to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg*

*Co.*, No. CV-09-8102-MMM-RZx, 2013 WL 6531177, *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." *Id*.

Based on counsel's declarations and the court's experience with this particular litigation, the court finds that the requested fees and costs are reasonable and appropriate as a percentage of the common fund, supported by a lodestar cross-check (with the plaintiff's suggested multiplier). The billing rates are normal and customary for timekeepers with similar qualifications and experience in the relevant market. Counsel also submitted a sufficient breakdown of the attorneys' hours to reach a conclusion about the lodestar and the positive multiplier. Counsel obtained excellent benefits for the class swiftly and efficiently, and there were significant risks involved with the litigation. *Vizcaino*, 290 F.3d at 1051 n.5 ("the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1352859, "Class counsel, however, 'should not be punished for efficiently litigating this action.'" (N.D. Cal Apr. 12, 2017) (quoting *Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, at *9 (N.D. Cal. Apr. 15, 2015)). The court grants Counsel's request for fees of 25 percent of the settlement amount, in line with Ninth Circuit's benchmark. *see e.g. Morgret v. Applus Technologies, Inc.*, No. 1:13–cv–01801–JLT, 2015 WL 3466389, *15−*17 (E.D. Cal. June, 2015) (awarding a similar amount attorneys' fees in a wage-and-hour case that was resolved in a little over a year following a mediation).

Class counsel also are entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (attorneys may recover

reasonable expenses that would typically be billed to paying clients in non-contingency matters); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (approving reasonable costs in class action settlement). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

The court approve the costs of $8,219.69.

### 8. Enhancement Awards

District courts must evaluate proposed awards individually, using relevant factors that include "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, … [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citation omitted). The Ninth Circuit has "noted that in some cases incentive awards may be proper but [has] cautioned that awarding them should not become routine practice." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013) (discussing *Staton*, 327 F.3d at 975–78). The Ninth Circuit also has emphasized that district courts "must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Id.* at 1164

The record establishes sufficiently the efforts of the named plaintiffs.[60] The court approves awards of $5,000 to Darren Stemple and $1,000 to Stefan Flores.

### 9. *Cy Pres* Award

The *cy pres* distribution accounts for and has a substantial nexus to the nature of the lawsuit, the objectives of the statutes, and the interests of the silent class members. *See Lane v. Facebook,*

---
[60] Brome Decl. – ECF No. 59-1 at 7 (¶ 25).

*Inc.*, 696 F.3d 811, 818–22 (9th Cir. 2012); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1048–41 (9th Cir. 2011).

## CONCLUSION

The court approves the class-action and FLSA settlement, including the fees and costs.

**IT IS SO ORDERED.**

Dated: March 26, 2020

LAUREL BEELER
United States Magistrate Judge